IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WHITNEY BANK, | : | |
| Plaintiff, | : | |
| vs. | : | CA 12-0198-CG-C |
| THOMAS C. SWEARINGEN, | : | |
| Defendant. | | |

**REPORT AND RECOMMENDATION**

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the complaint (Doc. 1), defendant's answer (Doc. 5), which was also construed as a motion to change venue (Doc. 6), plaintiff's opposition (Doc. 9), defendant's amended motion for change of venue (Doc. 10), and plaintiff's opposition to the amended motion (Doc. 11). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court both **DECLINE** to find venue improperly laid in this district and also **DENY** defendant's request to transfer venue (*see* Docs. 6 & 10).

**FINDINGS OF FACT**

On February 19, 2010, in Mobile, Alabama, defendant Thomas C. Swearingen ("Swearingen") executed a commercial mortgage note in favor of the plaintiff in the amount of $149,668.50. (Doc. 1, ¶ 7; *see also* Doc. 1, Exhibit A.) This note was secured by

that certain Deed of Trust Swearingen executed in favor of Whitney Bank on the same date in Mobile, Alabama, granting plaintiff a security interest in Lots 1, 2 and 4 of the Swearingen Property situated in Sevier County, Tennessee. (Doc. 1, ¶ 8; *see also* Doc. 1, Exhibit B.) On September 22, 2010, and again on March 29, 2011, Swearingen renewed the note in Mobile, Alabama; on each such occasion, the deed of trust was modified, in Mobile, Alabama, to reflect a change in the maturity date. (*See* Doc. 1, Exhibit A, RENEWAL NOTES & Modification Agreements.) Under the second renewal dated March 29, 2011,[1] the note matured on September 26, 2011 without payment of all indebtedness due and owing thereunder. (*Compare* Doc. 1, at ¶ 9 *with* Doc. 1, Exhibit A.) Whitney Bank accelerated the indebtedness (Doc. 1, at ¶ 9) and because the Deed of Trust contained a power of sale provision allowing for nonjudicial foreclosure of the collateral (*id.* at ¶ 10; *see also* Doc. 1, Exhibit B[2]), plaintiff conducted a foreclosure sale on

---

[1]  On this date, Swearingen wrote a check in the amount of $1,066.39 to Whitney National Bank, from his personal account at Whitney. (Doc. 9, Exhibit B, at 2.) The face of the check reflects the following address for account holder Dr. Thomas C. Swearingen: 41500 Whitehouse Fork Road, Bay Minette, Alabama 36507. (*Id.*)

[2]  The Deed of Trust reads, in relevant part, as follows:

> [I]t is hereby contracted and agreed that if default is made in the payment of principal or interest, or any part thereof, and said note is placed in the hands of an attorney at law for collection or because of any litigation involving either said note or notes of the above described property, fifteen percent attorney's fee will be added thereto, paid to the holder thereof, and secured by this instrument. It is also hereby agreed that a fee of like amount will be paid to the Second Party if said note or notes are not placed in the hands of an attorney but collection is made by foreclosure hereof, which amount shall likewise be secured by this instrument.
>
> In addition to the above described indebtedness, this instrument shall also secure (1) any and all other existing indebtedness or other obligations of

(Continued)

First Party [Swearingen] now held by the holder of the indebtedness secured hereby, hereinafter called beneficiary [Whitney Bank], and any renewals thereof, regardless of maturity, and (2) any and all future indebtedness which may be hereafter created by First Party, or any of them, and be held by the beneficiary, and any renewals thereof regardless of maturity, within a period of ten years from date and up to an amount not exceeding the amount of the original indebtedness secured hereby, whether said indebtedness is evidenced by note or notes, draft, check, account, or otherwise.

Now therefore, if the said First Party shall pay to the holder of the indebtedness secured hereby, hereinafter called beneficiary, the full amount of the indebtedness above mentioned, with interest thereon and attorney's fees, if any, when the same shall become due and payable as set forth . . . then these presents and the estate hereby conveyed shall cease and become void. Should the First Party fail to pay any of the said taxes, attorney's fees, if any, or take out and keep up such insurance, or fail to pay or keep current the payments on any prior or superior encumbrances or lien, the beneficiary hereunder may pay any such taxes, attorney's fees, and insurance premiums, and pay or bring current such prior or superior liens or encumbrances and any such amounts so paid or advanced, together with interest from the date of payment, shall be fully protected by this deed of trust, and addition to this protection, the payment of said amounts shall not be a waiver of the right of said beneficiary to foreclose and enforce this deed of trust. If default be made in the payment of the above mentioned indebtedness, or any part thereof, the interest thereon as it becomes due, the taxes as they become due, the said insurance premiums, or if default be made in the payment or keeping current of the payments on all prior and superior encumbrances and liens or if litigation arises involving said note or notes on the property herein described, or the employment of an attorney is necessitated for any reason, then the First Party will pay a fee of fifteen percent for the attorney for the beneficiary, and the entire indebtedness may, at the option of the beneficiary, be declared due. Thereupon the Second Party shall at the request of the beneficiary hereunder, after giving notice of the time and place of sale by publishing said notice of sale at least three different times in some newspaper published in the county in which the property lies, the first of which publications shall be made at least twenty days previous to said sale . . . or as otherwise provided by law, at the time and place fixed, proceed to sell the property and premises above described and conveyed at public auction for cash, and in bar of the right and equity of redemption, and in bar of all homestead and dower rights, all of which are hereby waived and surrendered. The Second Party shall apply the proceeds of such sale first to the payment of all costs and expenses of such sale, including a fee of fifteen percent to the attorney or trustee, which fee shall become absolutely due and payable whenever said indebtedness, or any part thereto, is placed in the hands of an attorney at law for collection, or foreclosure is commenced under this instrument by the Second Party, as the case

(Continued)

the steps of the Sevier County courthouse in Sevier County, Tennessee on March 14, 2012 (Doc. 1, at ¶ 11). Whitney Bank was the successful purchaser of the property at the competitive foreclosure sale; plaintiff paid $84,000 in cash for the property as reflected on the Trustee's Deed. (*Compare id. with* Doc. 1, Exhibit C, TRUSTEE'S DEED.)

Because the foreclosure sale left a deficiency balance under the loan documents in the amount of $75,378.90 as of March 19, 2012 (Doc. 1, at ¶ 12), Whitney Bank filed suit in this Court against Swearingen on March 20, 2012, seeking recovery of the deficiency balance due and owing under the loan documents, as well as interest, court costs, attorney fees, etc. (*see* Doc. 1, at 3-4). Whitney Bank, a Louisiana banking organization organized under the laws of the State of Louisiana (Doc. 1, ¶ 1), averred in

---

> may be; second, to the payment of the indebtedness herein secured; third, the surplus, if any, shall be paid to the First Party or his order or as otherwise required by law, provided however that the surplus, if any, may, at the option of the beneficiary, be paid into a court of competent jurisdiction in interpleader proceedings with the costs and attorneys' therefore to be paid out of such surplus.
>
> . . .
>
> It is agreed that both Parties in case of any sale of any said property shall be at liberty to bid and buy as any third person might. The Second Party shall and the beneficiary may announce the entry of any bid instructed by the beneficiary.

(*Id*. at 2-3, 3, 3-4, 4 & 5.)

the complaint that, based upon its information and belief, Swearingen was a citizen of Alabama residing in Baldwin County, Alabama (*id.* at ¶ 2). Indeed, plaintiff successfully served Swearingen with a copy of the complaint on March 22, 2012, by certified mail, at the following address: 41500 Whitehouse Fork Road, Bay Minette, Alabama 36507. (Doc. 4; *see also* Doc. 9, Exhibit A.) Swearingen signed the green certified mail card. (*Compare id. with* Docs. 6 & 10, at 2.)

Swearingen answered the complaint on April 10, 2012. (Doc. 5.) Because the answer contained the defendant's allegations that he is a legal resident not of Alabama but of Tennessee (Doc. 5, at ¶ 2) and "[t]he proper venue in this case is the Sevier County District Court in Tennessee" since he is a "resident of Sevier County, TN[,]" the Clerk's Office also docketed his answer as a motion to change venue (*see* Doc. 6).

In opposing the motion to change venue, plaintiff argues that venue is proper under 28 U.S.C. § 1391(b)(1) since Swearingen's signed receipt of the summons and complaint in Bay Minette, Alabama, at the same address from which the defendant made numerous note payments, establishes that he was residing in this district at the time this lawsuit was initiated. (Doc. 9, at 1 & Attached Exhibits.) Plaintiff also contends, even discounting the foregoing, that venue is proper in this district in accordance with 28 U.S.C. § 1391(b)(2) since a "'substantial part of the events or omissions giving rise to the claim occurred [in this district].'" (Doc. 9, at 1-2.)

Swearingen filed an amended motion for change of venue on April 27, 2012, same reading, in relevant part, as follows:

5

     1.     Defendant, Thomas C. Swearingen, is an individual and resident of the State of Tennessee, residing in Sevier County, Tennessee at 3746 Swearingen Way, Sevierville, TN 37862. He is not a legal resident of Alabama.

     2.     The real property subject to the Deed of Trust cited by Plaintiff in its complaint is also in Sevier County, Tennessee.

     3.     Defendant maintains the proper venue for this case is the Sevier County District Court in Tennessee.

. . .

     5.     Defendant is destitute, unable to afford legal counsel, and has been unemployed for well over a year. Proceeding with this civil action in the United States District Court in Mobile, AL will create an undue hardship on the Defendant. Due to the financial constraints and practical inability of defendant to adequately represent himself in the Southern District of Alabama, failure to change the venue of this case will result in an inequitable and unjust civil procedure.

(Doc. 10, at 1 & 2.) Plaintiff's opposition to Swearingen's amended motion to change venue reads, in part, as follows:

     2.     Defendant does not state in his Amended Motion to Change Venue when he became a resident of the State of Tennessee. If it was after suit was filed, it has no bearing on proper venue at the time suit was initiated and venue is proper in the Southern District of Alabama if he was a resident of the Southern District at the time suit was filed pursuant to 28 U.S.C. § 1391(b)(1).

     3.     Further, even assuming *arguendo* that Defendant was a resident of Tennessee at the time suit was filed, his Amended Motion to Change Venue in no way addresses venue under 28 U.S.C. § 1391(b)(2) which establishes venue where a "substantial part of the events or omissions giving rise to the claim occurred." Whitney established in its Opposition to Defendant's initial Motion to Change Venue that the subject loan was originated and administered in the Southern District of Alabama and that Defendant paid on the subject loan and defaulted on the loan in the Southern District of Alabama.

(Doc. 11, at 1-2.)

6

## **CONCLUSIONS OF LAW**

A. **Whether Venue is Properly Laid in this District**.  Given Swearingen's initial argument that the proper venue of this case is in Tennessee, as opposed to Alabama, since he is a resident of Sevier County, Tennessee (*see* Doc. 6), the undersigned first considers whether venue is properly laid in this district. The undersigned need answer this question first because such answer necessarily will inform what transfer of venue analysis is applicable in this case. *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1368 n.1 (11th Cir. 2003) ("Section 1404(a) states: 'For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.' It is implicit in the Alabama court's citation to section 1404(a) that, in the court's view, venue was properly laid in Alabama. Otherwise, the court would have transferred the case pursuant to 28 U.S.C. § 1406(a), which provides that '[t]he district court of a district in which is filed a case laying venue *in the wrong division or district* shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'" (emphasis in original)).

The general federal venue statute provides that "[a] civil action may be brought in[] (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in

which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1)-(3).

Where improper venue is alleged, "the plaintiff must present only a prima facie showing of venue" and, in so doing, "[t]he facts as alleged in the complaint are taken as true, to the extent they are uncontroverted by [the] defendant[']s affidavit[]." *Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (citations omitted).

In this case, it is clear to the undersigned that plaintiff has presented a prima facie showing of venue under § 1391(b)(2) and, as well, under § 1391(b)(1). For purposes of § 1391(b)(1), the undersigned finds a prima facie showing of venue in this district based upon the following: (1) plaintiff's averment in the complaint that upon its information and belief, Swearingen, at the time of the filing of the complaint, was an Alabama citizen residing in Baldwin County; (2) perfection of service of the summons and complaint, on March 22, 2012, by certified mail, on Swearingen at 41500 Whitehouse Fork Road, Bay Minette, Alabama 36507, the same address from which the defendant made numerous note payments on the commercial mortgage note which is the focus of this complaint; and (3) Swearingen's failure to state in either of his venue motions that he was not a resident citizen of Baldwin County, Alabama when Whitney Bank filed the complaint on March 20, 2012.

Even assuming, however, that the foregoing is not sufficient to establish a prima facie showing of venue under § 1391(b)(1), plaintiff certainly has made a prima facie showing of venue under § 1391(b)(2), which lays venue in a district in which "a

8

substantial part of the events or omissions giving rise to the claim" occurred. *Cf. Jenkins Brick Co., supra,* 321 F.3d at 1371 ("The new language [of the general venue statute] thus contemplates some cases in which venue will be proper in two or more districts."). As noted by the court in *Jenkins Brick Co.*, "[o]nly the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Id.* The court in *Jenkins Brick Co.* relied upon the Eighth Circuit's opinion in *Woodke v. Dahm,* 70 F.3d 983 (1995), which "noted that the statute protects defendants, and Congress therefore 'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.'" *Id*. at 1371-1372, quoting *Woodke v. Dahm,* 70 F.3d at 985.

     In this case, the events giving rise to Whitney Bank's claim occurred almost exclusively in the Southern District of Alabama. This is a note case. Swearingen executed the commercial mortgage note in favor of the plaintiff in Mobile, Alabama on February 19, 2010 and, that same date, executed, in Mobile, Alabama, a Deed of Trust in favor of Whitney Bank, granting plaintiff a security interest in Lots 1, 2 and 4 of the Swearingen Property situated in Sevier County, Tennessee. On September 22, 2010, and again on March 29, 2011, Swearingen renewed the note in Mobile, Alabama and, on each such occasion, the deed of trust was modified, in Mobile, Alabama, to reflect a change in the maturity date. Moreover, on March 29, 2011, Swearingen wrote a check in the amount of $1,066.39 to Whitney National Bank, from his personal account at Whitney, the face of which reflected the address for account holder Dr. Thomas C. Swearingen to be 41500 Whitehouse Fork Road, Bay Minette, Alabama 36507. Either

9

prior to or as of the final renewal maturity date of September 26, 2011, Swearingen defaulted under the terms of the loan documents, plaintiff accelerated the indebtedness contemplated thereunder, and because the Deed of Trust contained a power of sale provision allowing for nonjudicial foreclosure of the collateral, Whitney Bank conducted a foreclosure sale of the collateral on the Sevier County, Tennessee courthouse steps on March 14, 2012. The foreclosure sale was the sole act occurring in Tennessee. Because the foreclosure sale left a deficiency balance under the loan documents in the amount of $75,378.90 as of March 19, 2012, plaintiff filed suit in this Court seeking recovery of the deficiency balance due under the commercial mortgage note executed by defendant in Mobile, Alabama.

In light of the foregoing, the undersigned recommends that this Court find that because most of the events directly giving rise to Whitney Bank's claim against Swearingen occurred in the Southern District of Alabama, plaintiff has made a prima facie showing that venue is proper in this district. Accordingly, to the extent Swearingen's motions can be read as requesting a dismissal of this action for lack of proper venue, those motions are due to be **DENIED**. Because venue of this action is properly laid in the Southern District of Alabama, the undersigned considers Swearingen's alternative request that venue of this action be transferred to Tennessee.

  B. <u>**Whether Venue Should be Transferred**</u>.

Whether venue of this action should be transferred to Tennessee, as Swearingen contends (*see* Doc. 10, at 2 ("Due to the financial constraints and practical inability of defendant to adequately represent himself in the Southern District of Alabama, failure

10

to change venue of this case will result in an inequitable and unjust civil procedure.")),

is governed by 28 U.S.C. § 1404(a). Before delving into § 1404(a), the undersigned would

note that in no event can this Court transfer this action to the court Swearingen desires,

that is, the Sevier County District Court (*see* Docs. 6 & 10), a state court; instead, at best,

transfer of this action would be to the United States District Court for the Eastern

District of Tennessee, Northern Division, with court being held in Knoxville, Tennessee,

*see* 28 U.S.C. § 123(a)(1) ("The Northern Division [of the Eastern District of Tennessee]

comprises the counties of Anderson, Blount, Campbell, Claiborne, Grainger, Jefferson,

Knox, Loudon, Monroe, Morgan, Roane, Scott, *Sevier*, and Union. Court for the

Northern Division shall be held at Knoxville." (emphasis supplied)).[3]

---

[3]     Swearingen makes the conclusory argument, in his initial motion, that "[t]he amount in controversy was willfully and artificially manipulated by Plaintiff to create Federal District Court jurisdiction." (Doc. 6, at ¶ 5.) He expounds on this argument only slightly in his amended motion to change venue: "The principal amount of controversy in this case does not meet the jurisdictional limitation of the court. Defendant maintains the Tennessee counsel for the Plaintiff improperly conducted the foreclosure sale of the collateral property, changing the date without due public announcement. Plaintiff then intentionally planned the sale outcome to create a deficiency sufficient for United States District Court jurisdiction. These predatory actions of Plaintiff represent capricious manipulation of foreclosure procedure to obtain an outcome adverse to Defendant and sufficient for Federal jurisdiction. Filing this civil action in the Southern District of Alabama further avoids review of Plaintiff's foreclosure actions subject to state law in the appropriate Tennessee court." (Doc. 10, at ¶ 4.) While the foregoing certainly represents Swearingen's position in this litigation, his conclusory allegations simply do not establish that plaintiff has improperly alleged diversity jurisdiction in this case (Doc. 1, at ¶¶ 2, 5 & 12 ("Upon information and belief, Defendant, Thomas C. Swearingen, is an individual and citizen of the State of Alabama, residing in Baldwin County, Alabama. . . . This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Whitney Bank is a resident corporation of Louisiana and Defendant is a resident of Alabama [or Tennessee]; therefore, complete diversity of the parties is met. The amount in controversy exceeds the minimal limits of the Court for diversity jurisdiction. . . . The foreclosure sale on the property left a deficiency balance under the Loan Documents in the amount of $75,378.90 as of March 19, 2012, which consists of a principal balance in the amount of $65,668.50, accrued interest in the amount of $8,621.81 (per diem $32.84), accrued late fees in the amount of $113.59 and an appraisal fee in (Continued)

11

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court **may** transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." (emphasis supplied). Relevant § 1404 factors include: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citations omitted); *see also*

---

the amount of $975.00.")). *Compare* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]") *with* 28 U.S.C. § 1332(b) ("Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff."). Based on the face of the complaint, plaintiff has properly alleged diversity jurisdiction and none of defendant's conclusory arguments detract from the averments contained in the complaint. *Massey v. Congress Life Ins. Co.,* 116 F.3d 1414, 1418 n.1 (11th Cir. 1997) ("For a federal court to have diversity jurisdiction, [] the plaintiff must allege a proper jurisdictional basis in the complaint. In particular, the plaintiff must allege that the plaintiff and defendant[] are citizens of different states and the amount in controversy exceeds [$75,000], exclusive of interest and costs. 28 U.S.C. § 1332(a)." (internal citation omitted)); *see also Bryant v. Ally Financial,* 452 Fed.Appx. 908, 909 (11th Cir. Jan. 17, 2012) ("Jurisdiction 'cannot be waived or otherwise conferred upon the court by the parties.' Plaintiffs must 'affirmatively allege facts demonstrating the existence of jurisdiction.'" (internal citations omitted)). Defendant, of course, is free to bring suit against Whitney Bank in the appropriate state court in Tennessee for any alleged improprieties in the foreclosure sale conducted on March 14, 2012.

*Gould v. National Life Ins. Co.*, 990 F.Supp. 1354, 1357-1358 (M.D.Ala. 1998) (when deciding whether to transfer venue, "courts generally rely on a number of factors including: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses, and the availability of witnesses through compulsory process; (4) the location of documents and other sources of proof; (5) the relative ability of the parties to bear the expense of changing the forum; and (6) trial efficiency and expense to the justice system."); *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (decided before enactment of § 1404 but noting numerous relevant factors and observing that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

The defendant in this case has not satisfied his burden of establishing that this case represents one of those rare situations warranting the disturbance of plaintiff's choice of forum. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference. . . . Thus, in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient."). The convenience of the parties amounts to a wash in this case since it is certainly more convenient for the plaintiff, whose principal place of business is in Louisiana, to pursue this lawsuit in this Court, whereas it is more convenient for defendant to defend the action in the Northern Division of the Eastern District of Tennessee, nearer to where the defendant now

resides.[4] There is absolutely no indication from the defendant that he has witnesses that will be unavailable for trial in this Court, if a trial is, in fact, necessary. *Cf. American Standard, Inc. v. Bendix Corp.*, 487 F.Supp. 254, 262 (W.D.Mo. 1980) ("[I]f the party moving for transfer under § 1404(a) merely makes a general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be, the motion for transfer based on convenience of witnesses will be denied."). Given the ability to move documents with relative ease in today's world, the location of documents (and other sources of proof) factor certainly does not weigh in favor of transfer to the Eastern District of Tennessee, particularly since most of the pertinent documents were generated in Alabama. In addition, this Court is more familiar with Alabama law, the governing law in this action, than is the United States District Court for the Eastern District of Tennessee. Finally, there has been presented nothing to suggest that the trial efficiency and expense to justice system factor weighs in favor of transfer, particularly since this Court stands ready to give both parties a full and fair hearing in an expeditious manner. *Cf. P & S Business Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 808 (11th Cir. 2003) ("Although docket congestion, if proven, may be an appropriate consideration in a § 1404 motion to transfer, case law does not suggest that docket congestion is, by itself, a dispositive factor."). All a transfer would do in this case is shift inconvenience from the defendant to the plaintiff and

---

[4] While the relative means of the parties weighs in favor of Swearingen (*see* Doc. 10, at 2), this factor is alone not sufficient to overcome the plaintiff's choice of forum, particularly since this case is conducive to disposal on motion for summary judgment (*see* Doc. 13).

therefore, this Court must necessarily favor plaintiff's choice of forum by denying the defendant's implicit motions to dismiss or transfer venue to the Eastern District of Tennessee. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) ("'The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.'"); *see Susie's Structures, Inc. v. Ziegler*, 2010 WL 2136513, *6 (M.D. Fla. May 27, 2010) ("[G]reat deference is afforded the plaintiff's choice of forum when that forum is in the district in which the plaintiff resides.").

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that the Court **DECLINE** to find venue improperly laid in this district and also **DENY** Swearingen's request to transfer venue (*see* Docs. 6 & 10).

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 4th day of May, 2012.

        s/WILLIAM E. CASSADY  
       **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[5] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[5] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).