IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WHITNEY BANK,                      )

      Plaintiff,           )

v.                         )     CIVIL ACTION NO. 12-00198-CG-C

THOMAS C. SWEARINGEN,    )

      Defendant.      )

## MEMORANDUM OPINION AND ORDER

This matter is before the court on plaintiff's motion for summary judgment (Doc. 39), defendant's opposition to the motion (Docs. 23, 24, 25, 27, 33), and plaintiff's reply (Doc. 39). For reasons which will be explained below, the court finds that the foreclosure in question was conducted according to the laws of Tennessee, that Mr. Swearingen's Constitutional due process rights were not violated, and that the purchase price of the foreclosed property was not inadequate or improper. However, the court also finds that Whitney Bank has failed to explain certain discrepancies in the amounts owed under the Note. Accordingly, plaintiff's motion is due to be granted in part, and denied in part.

## FACTS

This case arises out of a Commercial Mortgage Note ("Note") in the amount of $149,668.50, executed by Thomas C. Swearingen in favor of Whitney Bank on

February 19, 2012. (Doc. 13-2).  The Note was secured by a Deed of Trust granting

Whitney Bank a security interest in Lots 1, 2 and 4 of Mr. Swearingen's property in

Sevier County, Tennessee. (Doc. 13-3, Doc. 13-5, ¶ 8).  The Note included the

following provision:

> Additionally upon the occurrence of any Event of Default hereunder
> (and from and after the date of such occurrence), interest shall, to the
> extent permitted by law, accrue at the Default Rate.  The Default Rate
> shall be the maximum rate authorized by applicable law, and if
> applicable law establishes no maximum rate, then Eighteen Percent
> (18%) per annum.

(Doc. 13-2, p. 1).  The Note matured on September 26, 2011 and payment became

due in full under the loan documents. (Doc. 39-1, ¶ 4).  Demand was sent to Mr.

Swearingen on November 3, 2011. (Doc. 25-1,p.1).   Beginning November 15, 2011,

Whitney Bank began applying the default interest rate of 18%, which, it reports,

resulted in a per diem charge of $74.84.

On March 14, 2012, Whitney Bank conducted a foreclosure sale on the subject

real property. (Doc. 13-5, ¶¶ 8-10).  The loan documents contained a power of sale

provision allowing for nonjudicial foreclosure of the collateral.  The foreclosure was

advertised in the Tennessee Star Journal, a newspaper published in Sevier County,

Tennessee, and commonly used for advertisements of Trustee Sales in Sevier

County. (Doc. 39-2, ¶ 5).  The notice was published on January 25, 2012, February

1, 2012 and February 8, 2012. (Doc. 39-2, p. 11).  The sale was originally set to occur

on February 15, 2012, but was postponed until March 14, 2012. (Doc. 39-2, ¶ 10).

The postponement was announced at the originally set time, date and place of the

foreclosure and written notices of the postponement were sent on February 15, 2012, to interested parties, including Mr. Swearingen. (Doc. 39-2, ¶¶ 8, 9; Doc. 39-2, pp. 8-10).   At the foreclosure sale, held on March 14, 2012, Whitney Bank purchased the property and a Trustee's Deed was issued to Whitney Bank. (Doc. 13-4, Doc. 13-5, ¶ 10).  The purchase price for the property was $84,000.00, which represented 80% of Whitney Bank's most recent appraised value of $105,000.00. (Doc. 39-2, ¶ 10).  No other parties offered a higher bid for the property. (Doc. 39-2, ¶ 10).

Whitney Bank submitted the affidavit of its Vice-President, Richard D. Buntin, stating the amounts owed under the Note and the balance remaining after foreclosure. (Doc. 13-5).  According to Mr. Buntin, the foreclosure sale left a deficiency balance under the loan in the amount of $76,757.91 as of April 30, 2012, which consists of a principal balance in the amount of $65,668.50, accrued interest in the amount of $10,000.82 (per diem rate of $32.84), accrued late fees in the amount of $113.59 and an appraisal fee in the amount of $975.00. (Doc. 13-5, ¶ 11). The loan documents also provide for recovery of costs of collection, including reasonable attorney's fees. (Doc. 13-5, ¶ 13).  As of April 30, 2012, Whitney Bank incurred $7,078.51 in attorney's fees and expenses in attempting to collect the amounts due under the Note. (Doc. 13-6).  Interest continues to accrue under the Note and Whitney Bank continues to incur attorney's fees and expenses while this case proceeds.

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party,

and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).   "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e) "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact

5

to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## B. Plaintiff's Claims

Whitney Bank moves for summary judgment on all of its claims and seeks a judgment in the amount of $76,757.91 plus accrued interest since April 30, 2012, and attorney's fees and expenses.  Swearingen opposes summary judgment arguing (1) that the foreclosure was not conducted properly; (2) that if the property had been properly sold at a competitive sale, there would be no deficiency; and (3) that the amount claimed by Whitney Bank is incorrect.

### 1. Foreclosure Procedure

Swearingen contends that the property was sold without due process under the laws of the State of Tennessee.  Swearingen further argues that if the sale was legal then the laws of the State of Tennessee violate the Fifth Amendment of the Constitution of the United States because they violate the right of property owners to due process of law under the Constitution.  Specifically, Swearingen objects to the notice and publication of the foreclosure sale.  Swearingen contends that the Tennessee Star Journal in which it was published has a limited distribution and that the notice did not allow sufficient time before the sale.

Tennessee law requires that foreclosures be advertised at least three different times "in some newspaper published in the county where the sale is to be made" with the first publication being at least twenty days prior to the sale. T.C.A. § 35-5-101(a)-(b).  In the instant case, Whitney Bank published the notice in a newspaper that is commonly used for such advertisements in Sevier County, Tennessee, the county where the sale was to be made.  The notice was published three times, with the first publication running on January 25, 2012.  The sale was originally scheduled to be held 21 days later, on February 15, 2012.  Thus, the required 20 day prior notice was provided.

The sale was postponed until March 14, 2012.  Tennessee law allows postponement under the following circumstances: "[u]nless postponement or adjournment is contractually prohibited" the sale may be adjourned and rescheduled "without additional newspaper publication" so long as:

> (1) The sale must be held within one (1) year of the originally scheduled date;
>
> (2) Each postponement or adjournment must be to a specified date and time, and must be announced at the date, time and location of each scheduled sale date;
>
> (3) If the postponement or adjournment is for more than thirty (30) days, notice of the new date, time, and location must be mailed no less than (10) calendar days prior to the sale date via regular mail to the debtor and co-debtor; and
>
> (4) Notice of the right to postpone or adjourn without additional newspaper publication shall not be required to be published in any newspaper publication.

7

T.C.A. § 35-5-101(f).  In the instant case, the sale was held 28 days after it was originally scheduled and the postponement was announced at the originally set time, date and place of the foreclosure and notices of the postponement were sent on the date it was originally scheduled to interested parties, including Mr. Swearingen. Thus, Whitney bank followed Tennessee's prescribed postponement procedure.

Mr. Swearingen, argues that even if Whitney Bank complied with Tennessee's notice requirements, the notice requirements were not adequate to give Mr. Swearingen due process of law under the Constitution.  However, Swearingen points to no case law that would support his claim.

In relevant part, the Fourteenth Amendment provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.  It is well established that the Due Process Clause of the Fourteenth Amendment applies only to state action, not private conduct. See, e.g., Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 930, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) ("Because a due process violation was alleged and because the Due Process Clause protects individuals only from governmental and not from private action, plaintiffs had to demonstrate that [the conduct of which they complained] was accomplished by state action.") (citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)).  The Sixth Circuit, addressing the Tennessee

laws governing nonjudicial foreclosure, has held that private foreclosure sales to not

constitute state action:

> The district court correctly concluded that this private foreclosure sale
> does not constitute state action. The Supreme Court has held that
> where state involvement in a private action constitutes no more than
> acquiescence or tacit approval, the private action is not transformed
> into state action even if the private party would not have acted without
> authorization of state law. Flagg Bros. v. Brooks, 436 U.S. 149, 98
> S.Ct. 1729, 56 L.Ed.2d 185 (1978). Indeed, under the Flagg standard,
> the actions of a private party will not be attributed to the state unless
> the state actually compels the action. United States v. Coleman, 628
> F.2d 961, 964 (6th Cir.1980).

> Tennessee does not compel the use of private nonjudicial foreclosure
> sales in financing agreements, but rather allows the creditor to choose
> between judicial sale or private nonjudicial sale .... This recognition of
> private nonjudicial foreclosures falls short of the compulsion required
> to establish state action. See Flagg, 436 U.S. 149, 98 S.Ct. 1729, 56
> L.Ed.2d 185; Adikes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598,
> 26 L.Ed.2d 142 (1970).

King v. Emery, 836 F.2d 1348, 1988 WL 1101, *1 (6th Cir. Jan.11, 1988).   As the

Eastern District of Tennessee recently explained:

> The challenged statutes did not create the terms of the parties' deed of
> trust or mandate the power-of-sale clause's inclusion therein, nor did
> they compel Defendant to foreclose pursuant to that agreement.
> Rather, those laws recognize that parties may enter into private
> contracts containing power-of-sale provisions, and they define some
> means by which enforcement may be effected. They are merely default
> regulations that become applicable only after (1) the parties have
> chosen to enter into a contractual agreement and (2) the creditor has
> chosen to act pursuant to that agreement's terms. Nothing in the
> existence or application of the statutes supports Plaintiffs' contention
> that Tennessee is so entangled with the non-judicial foreclosure
> process as to call into question the process's private character.

Holton v. Wells Fargo Bank, N.A.,  2012 WL 928060, *6 (E.D. Tenn. March 19,

2012) (citing King supra and United States v. Coleman, 628 F.2d 961, 964 (6th

Cir.1980)).  Because no state action was involved in the nonjudicial foreclosure of

Swearingen's property, he cannot state a plausible claim under the Fourteenth

Amendment.


### 2. Competitive Sale of Property

Mr. Swearingen asserts that the loan was over-collateralized and that a fair

and competitive sale should have more than paid off the loan.[1]  Swearingen's

---

[1] The court notes that Swearingen makes these statements in a document titled
"AFFIDAVIT BY DEFENDANT" claiming that he has "first-hand knowledge" of
these facts. (Doc. 27).  However, the purported affidavit is not properly sworn.  An
affidavit is "[a] voluntary declaration of facts written down and sworn to by the
declarant before an officer authorized to administer oaths, such as a notary public."
Black's Law Dictionary, at 62 (8th ed. 2004).  Although in the document Swearingen
"swears the same to be a true and correct description of events" this statement
appears at the beginning of the document and the document is not notarized.
    An unsworn affidavit may be considered as evidentiary support if it includes
a statement that the declarant certifies or states "under penalty of perjury that the
foregoing is true and correct" and is dated and signed by the declarant. 28 U.S.C. §
1746.  However, Mr. Swearingen's affidavit did not state that it was true "under
penalty of perjury" and therefore, it cannot be considered as evidentiary support.
See U.S. v. 8 Gilcrease Lane, Quincy Fla. 32351, 587 F.Supp.2d 133, 139 (D.D.C.
2008) ("there are two statements that are essential to a proper verification under §
1746: (i) an assertion that the facts are true and correct; and (ii) an averment that
the first assertion is made under penalty of perjury." citing Nissho–Iwai Am. Corp.
v. Kline, 845 F.2d 1300, 1306 (5th Cir.1988)); Kersting v. U.S., 865 F.Supp. 669,
676 (D. Hawaii 1994) "As long as an unsworn declaration contains the phrase
"under penalty of perjury" and states that the document is true, the verification
requirements of 28 U.S.C. § 1746 are satisfied." citations omitted).
    Even if the statements could be considered by the court as evidentiary
support for Swearingen's opposition to summary judgment, the statements made in
the affidavit do not offer any real factual support.  Most of the information
contained in the affidavit has no bearing on the motion for summary judgment and
the remaining information is conclusory and appears to simply be argument.  The
only factual support offered in the affidavit for his conclusions is a general reference

argument is essentially that the property should have sold for more.  However,

property sold by foreclosure is frequently sold for less than it would have under

other circumstances.  See BFP v. Resolution Trust Corp., 511 U.S. 531, 538-539, 114

S.Ct. 1757, 1761-1762 (1994) ("Market value cannot be the criterion of equivalence

in the foreclosure-sale context. The language of § 548(a)(2)(A) ("received less than a

reasonably equivalent value in exchange") requires judicial inquiry into whether the

foreclosed property was sold for a price that approximated its worth at the time of

sale. An appraiser's reconstruction of "fair market value" could show what similar

property would be worth if it did not have to be sold within the time and manner

strictures of state-prescribed foreclosure. But property that must be sold within

those strictures is simply worth less. No one would pay as much to own such

property as he would pay to own real estate that could be sold at leisure and

pursuant to normal marketing techniques." (footnote omitted)).  "[A] fair and proper

price, or a "reasonably equivalent value," for foreclosed property, is the price in fact

received at the foreclosure sale, so long as all the requirements of the State's

---

to an appraisal, purportedly conducted by Whitney Bank.  However, the affidavit
does not attach or cite to the appraisal and does not provide any details of the date
or contents of the appraisal, other than stating that an appraisal indicated that the
loan in question was over-collateralized. Since Swearingen disputes the amount
owed under the Note and it is unknown when the purported appraisal was
conducted or what value it gave for the property, Swearingen's conclusion that it
shows that the property was over-collateralized does not raise a genuine issue of
material fact that would preclude summary judgment.  Mr. Swearingen may be
referring to the appraisal referenced by Whitney Bank that gives appraised value of
$105,000.00 for the property.  While this might indicate that the property was
appraised for more than was owed, as explained below, the appraised value is often
significantly higher than the purchase price of the property at a foreclosure sale.

foreclosure law have been complied with." Id. at 545.  In fact, Tennessee law recognizes that the price brought at a forced sale is often only one-half the property's true value. Cadence Bank, N.A. v. Latting Road Partners, LLC, 699 F.Supp.2d 1033, 1040 (W.D. Tenn. 2010) ("The fact that some appraisals suggested a higher value for the property than what Cadence Bank paid is also not controlling, as Tennessee law recognizes that 'property often brings only one-half its true value at a forced sale under the best of circumstances.' (citing Holt v. Citizens Central Bank, 688 S.W.2d 414, 416 (Tenn.1984)).  Here, Whitney Bank's bid was 80% of the only appraisal value that has been presented to the Court.  Whitney Bank's purchase price was much more than the 50% recognized as legitimate in Tennessee law.  Since the foreclosure was conducted according to the laws of Tennessee and resulted in a bid representing 80% of the appraised value of the property, the court finds Mr. Swearingen has failed to show that the purchase price was inadequate or improper.

### 3. Amount Owed

Mr. Swearingen asserts that Whitney Bank's correspondence show discrepancies in Whitney Bank's accounting.  Swearingen points to a letter he received from plaintiff's counsel stating that the outstanding balance was $152,353.76 on November 15, 2011 which included a principal balance of $149,668.50, $2,571.67 in interest ($18.71 per diem) and $113.59 in late fees (Doc. 25-6, p.2) and a second letter stating that the outstanding balance was $157,502.51

as of January 17, 2012, plus "per-day interest in the amount of $16.43 after January 17, 2012." (Doc. 26-6, p. 5).  Thus, the outstanding balance increased $5,148.75 in just over two months.  In addition, during that time period, Whitney Bank exercised its right of offset against two of Swearingen's bank accounts on December 22, 2011, seizing funds in the amount of $3,094.17 to offset interest on the loan. (Doc. 26-6, p. 4).  Thus, the total increase from November 15, 2011 until January 17, 2012 was $8,242.92, which Swearingen argues, would be a per diem rate of $130.84.  Whitney Bank responds that Swearingen has not taken into account the default rate of interest that applied beginning November 5, 2011.  However, the application of the default rate of 18% on November 15, 2011 still does not appear to account for an increase of $8,242.92.[2]  While it is possible there are additional fees or expenses added into the figure, Whitney Bank has not provided a detailed accounting or offered an explanation for the differences between the amounts stated in these letters.

It is also possible that one or more of the figures stated in the letters was a mistake.  The court notes that the second letter, which was sent by Whitney Bank's current counsel, stated that the per diem rate after January 17, 2012, before the property was sold to offset the balance owed but after the default interest rate applied, was $16.43.  That amount is much lower than what Whitney Bank now

---

[2] According to Whitney Bank the application of the 18% default interest rate results in a per diem charge of $74.84.  Sixty-three days times $74.84 equals $4,714.92.

asserts the per diem rate is after the property was foreclosed upon and is even lower than the per diem rate given in the earlier letter for interest before the default rate applied.  Clearly the per diem rate stated in the letter is incorrect.[3]  However, Whitney Bank has not admitted to any errors in the figures stated in any of its correspondence.[4]

Since there are unexplained discrepancies in the amounts Whitney Bank reported was owed, the court finds that Whitney Bank must provide more than just an affidavit reporting the final balance to support summary judgment.  Mr. Swearingen has provided evidence that raises a question as to whether Whitney Bank's calculations are accurate.  Without a full accounting or an explanation for the discrepancies, the court finds there remains a question of fact as to the amount currently owed.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment (Doc. 39), is **GRANTED in part** and **DENIED in part** to the extent that the court finds that the foreclosure was properly conducted according to the laws of Tennessee and

---

[3] If $16.43 had been the correct per diem rate, the additional interest accruing from November 15, 2011 to January 17, 2012 would amount to only $1,035.09, which, taking into account the offset of $3,094.17 seized from Swearingen's bank accounts, would have resulted in a <u>decrease</u> in the balance owed on January 17, 2012.

[4] Whitney Bank does not even mention the apparent mistake in the letter regarding the per diem rate, but states in an affidavit attached to its reply that the per diem rate from November 15, 2011 until the foreclosure on March 14, 2012 was $74.84. (Doc. 39-1, ¶ 5).

did not violate Mr. Swearingen's Constitutional Due Process rights.  However, their remains a question of fact regarding the precise balance owed under the Note in question.

The court notes that in addition to the amount of damages plaintiff is entitled to being undetermined at this time, Mr. Swearingen's counterclaim (Doc. 43) remains pending.  The parties are reminded that under the Scheduling Order entered in this case (Doc. 34), discovery and the time allowed for dispositive motions are currently set to expire on November 30, 2012.

**DONE and ORDERED** this 24th day of October, 2012.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE